

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EMR
F. #2018R01310

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 14, 2020

By ECF

The Honorable Roslynn R. Mauskopf
Chief United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Amaury Abreu, et al
               Criminal Docket No. 20-433 (RRM)

Dear Judge Mauskopf:

      The government respectfully writes to request a protective order, pursuant to Federal Rule of Criminal Procedure 16(d)(1), that would prevent the dissemination of certain materials (the "Protected Discovery")[1] beyond the defendants, their attorneys and other members of the defense teams. The government also respectfully requests that the Court order that this discovery material be returned upon the conclusion of the case. As set forth below, the government makes this application because there is reason to believe that the dissemination of such materials beyond the defendants and their attorneys in this case will jeopardize the safety of witnesses and their families and the integrity of ongoing

---

[1] The Protected Discovery includes: (a) documents, records, reports and other information, including, but not limited to, audio and video recordings, as well as transcripts and translations of such recordings and materials, that could lead to the identification of potential witnesses, including civilian witnesses, confidential informants or sources, and cooperating witnesses; (b) information related to ongoing investigations, including information that could identify the targets or such investigations; (c) witness statements provided pursuant to 18 U.S.C. § 3500; and (d) personal identifying information ("PII") (including names, addresses, phone numbers, dates of birth, passport numbers, Social Security account numbers or other identifying numbers, photographs and contact information) of the defendants or of other individuals.

investigations in this district and other districts and jurisdictions. A proposed order is attached hereto as Exhibit A for the Court's consideration.

I.   Background

By way of background, on November 5, 2020, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendants Amaury Abreu, Julio Bautista and Gustavo Valerio with (i) one count of conspiracy to import five kilograms or more of a substance containing cocaine, in violation of Title 21, United States Code, Sections 952 and 963, and (ii) one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of a substance cocaine, in violation of Title 21, United States Code, Sections 841 and 846. The indictment also charges Julio Bautista and Cesar Diaz-Bautista with one count of possession of five kilograms or more of cocaine with intent to distribute it, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii)(II).

As alleged in the indictment, Abreu, Bautista and Valerio are all members of a multinational drug trafficking organization ("DTO") with distributors in the New York-metropolitan area and the Dominican Republic. Between at least January 2016 and October 2020, the DTO imported multi-kilogram quantities of cocaine into the United States through a variety of means, including by sending drug couriers on flights to the United States, concealing narcotics in mail and tractor trucks that enter the United States from Mexico, and concealing narcotics in produce shipments that are imported into the United States. Since 2016, law enforcement agents have seized more than 350 kilograms of cocaine belonging to the DTO.

In addition, on January 2, 2020, law enforcement agents in Nassau County searched a house belonging to Julio Bautista and Cesar Diaz-Bautista pursuant to a search warrant signed by a judge in Nassau County Supreme Court. During the execution of the warrant, the agents seized approximately 5.8 kilograms of cocaine, approximately $4,300, a cocaine press, a mechanical trap table, digital scales, a money counting machine and numerous items of drug packaging equipment.

II.   Applicable Law

Rule 16(d)(1) states that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Id. The commentary to Rule 16 provides that, "[a]mong the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger or perjury or witness intimidation, the protection of information vital to the national security, and the protection of business enterprises from economic reprisals." Fed. R. Crim. P. 16 advisory committee's note (1966 amend.). The final decision on whether to enter such an order is within the district court's discretion, and such an order will not be overturned absent an abuse of that discretion. See United States v. Delia, 944 F.2d 1010, 1018 (2d Cir. 1991).

Similarly, the Jencks Act does not create a proprietary right to any government witness's statements. See 18 U.S.C. § 3500. The Act requires only that the government make these statements available to the defendants for the purposes of cross-examination, and defines the timing of such disclosures. See id.; see also United States v. Garcia, 406 F. Supp. 2d 304, 305 (S.D.N.Y. 2005) ("Jencks requires the Government to produce copies of its witnesses' statements for inspection by the defense, for purposes of cross-examination. It does not give defendants a property interest in such statements, or require the multiplication of copies of internal prosecution notes or reports for whatever use the defendants choose to make of them."). Indeed, in Garcia, the court explained:

> There will be cases, however, in which a casual attitude toward the handling of 3500 material is ill advised . . . . In particular, the wide dissemination of statements by cooperating witnesses who are regarded as "snitches" or "rats" by their criminal associates . . . poses obvious dangers. It is not enough to say, as the defendants argue in this case, that the damage is done by the mere disclosure that a witness has cooperated with the authorities. Hard evidence of the witness's betrayal can facilitate retaliation or intimidation of the witness. It is therefore appropriate, in a case where such retaliation may be feared, to restrict the circulation of such material.

Id. at 306.

Accordingly, courts have routinely granted protective orders regulating the dissemination of information in criminal cases. See United States v. Gangi, No. 97-CR-1215, 1998 WL 226196, at *4 (S.D.N.Y. May 4, 1998) (ordering that information disclosed under protective order "[s]hall be used only by defendants and their counsel solely for purposes of this action"); United States v. Salemme, 978 F. Supp. 386, 390 (D. Mass. 1997) (requiring government to make certain disclosures and ordering that those disclosures be used "solely for the purpose of litigating matters in this case"); see generally United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private.") (citation omitted). In the context of traditional organized crime, whose tactics include obstructing justice and threatening witnesses, courts have routinely limited the dissemination of discovery. See, e.g., Order on Motion for Discovery, United States v. Basciano, No. 03-CR-929 (NGG), Dkt. No. 602 (E.D.N.Y. Jun. 30, 2006) (reaffirming prior protective order preventing dissemination of Jencks Act material and return of that material in light of "(1) evidence of Defendants' participation in violent acts within a criminal conspiracy that has been involved in witness tampering; (2) the Government's plan to present witnesses whose locations were undisclosed; and (3) the widespread distribution of 3500 material to members of the Bonanno organized crime family and members of the federal defense bar by the defendant Joseph Massino and his trial counsel, respectively, in a prior related case"); United States v.

3

Gotti, No. 02-CR-743, 2004 WL 2274712, at *3 (S.D.N.Y. Oct. 7, 2004) (noting that within RICO indictment, there "are multiple charges suggesting a willingness to employ violence and coercion against anyone who would cooperate with authorities against the Gambino Family"); United States v. Gotti, No. 02-CR-743, 2002 WL 31946775 (E.D.N.Y. Jun. 10, 2002) (holding that defendant, Peter Gotti, a member of the Gambino crime family, should be detained without bail, based on the government's evidence that the Gambino family had used "violence and murder to prevent the testimony of witnesses who the [Gambino] family have viewed as a threat").

III.     Argument

The government will disclose the Protected Discovery pursuant to its obligations under Rule 16 and 18 U.S.C. § 3500, which includes materials that could lead to the identification of potential witnesses, including civilian witnesses, confidential informants or sources, and cooperating witnesses, as well as information related to ongoing investigations and evidence of other crimes in addition to the ones charged here. The Protected Discovery also includes a large number of financial records that contain personal identifying information of the defendants and other individuals.

The government submits that, by entering the order, the Court will safeguard the defendants' respective privacy interests, as well as those of the individuals whose information is contained in the materials, while at the same time permitting the defendants timely access to materials and information that will assist them in preparing for trial in the most efficient way.

Without the proposed limitations on the dissemination of the Protected Discovery, there is reason to believe that the Protected Discovery will be disseminated to members of the DTO who are not under the supervision or control of the Court, as well as to other confederates of the defendants who may carry out their orders. Such dissemination would risk placing cooperating witnesses and their families in grave danger of physical harm, including death. Furthermore, dissemination of the Protected Discovery will also likely alert unindicted targets to the existence of ongoing investigations of their criminal activity, as well as the specific subject matter of an investigation and therefore may lead to the destruction or concealment of evidence and the flight of targets.

The defendants will not be prejudiced by the implementation of the proposed protective order because the defendants and their defense counsel will have access to the Protected Discovery and may use it to prepare for trial and to conduct cross-examination at trial.

4

IV.   Conclusion

For the foregoing reasons, the government respectfully submits that the requested protective order should be so ordered.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:      /s/
Erin Reid
Assistant U.S. Attorney
(718) 254-6361

Enclosure (Proposed Order)

cc:   All counsel of record (by ECF)