

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

FJN:EMR/MED  *271 Cadman Plaza East*
F. #2019R00498  *Brooklyn, New York 11201*

February 10, 2022

<u>By Email and ECF</u>

Honorable William F. Kuntz
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Ramon Romero
               Docket No. 20-CR-380 (WFK)

               United States v. Amaury Abreu
               Docket No. 20-CR-433 (WFK)

Dear Judge Kuntz:

      The government writes pursuant to Rule 13 of the Federal Rules of Criminal Procedure ("Rule 13") to respectfully request that the Court join the defendants Amaury Abreu, Criminal Docket No. 20-433 (WFK) ("Abreu")[1] and Ramon Romero, also known as "Bamba," Criminal Docket No. 20-380 (WFK) ("Romero") for trial.[2] As set forth below, trials in these two matters will involve substantially similar, if not identical, crimes, evidence, conduct and witnesses. Accordingly, for the reasons set forth below, the government respectfully submits that there will be a substantial savings of judicial resources and it is in the interest of justice to join Romero and Abreu for trial.

---

      [1] As explained below, Abreu was indicted separately from Romero along with Julio Bautista, Cesar Diaz-Bautista and Gustavo Valerio. Abreu remains the only defendant left on his indictment.

      [2] While the Court has not yet set a trial date for either Abreu or Romero, the government anticipates setting a motion schedule and trial date at Abreu's next status conference, scheduled for March 10, 2022 at 4:00 p.m.

I.   Background

Between 2016 and 2020 the defendants were members of a multinational drug trafficking organization led by Romero (the "Romero DTO") based in the New York-metropolitan area and the Dominican Republic. During that time, the Romero DTO imported more than 350 kilograms of cocaine into the United States.

Romero was a high-ranking leader of the Romero DTO who oversaw the organization's United States-based operations, obtained narcotics to import into the United States, and recruited, directed and paid individuals to carry out narcotics importation schemes. Romero personally recruited Abreu, a police officer with the New York Police Department ("NYPD") and Romero's longtime friend, to abuse his position by assisting Romero in concealing the DTO's criminal activities, keeping Romero advised of ongoing law enforcement operations that might impact the DTO's business and performing warrant checks on members of the Romero DTO using an NYPD database. In addition, on at least one occasion, Gustavo Valerio, a high-ranking member of the Romero DTO, gave Abreu cocaine to distribute at Romero's behest.

On November 5, 2020, a grand jury sitting in the Eastern District of New York returned the two above-referenced indictments charging Romero, Abreu, Julio Bautista and Valerio with: (i) one count of conspiracy to import five kilograms or more of a substance containing cocaine, in violation of Title 21, United States Code, Sections 952 and 963, and (ii) one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of a substance containing cocaine, in violation of Title 21, United States Code, Sections 841 and 846.[3]

At the time of their indictments, Abreu, Valerio, and Bautista were living in the Eastern District of New York, while Romero was living at an unknown location believed to be in the Dominican Republic. For that reason, and in light of the Romero DTO's history of keeping track of sensitive law enforcement operations that might impact the DTO, the government asked the Grand Jury to return a separate indictment for Romero.

On November 9, 2020, Abreu, Bautista, Diaz-Bautista and Valerio were arrested and Indictment Number 20-CR-433 was unsealed. Indictment Number 20-CR-380 remained under seal pending Romero's arrest. On January 25, 2021, the government moved ex parte that

---

[3] Defendants Julio Bautista and Cesar Diaz-Bautista were additionally charged with a separate count of possession with intent to distribute five kilograms or more of a substance containing cocaine, in violation of Title 21, United States Code, Section 841. Those charges arose out of the search a house belonging to Julio Bautista pursuant to a search warrant. During the execution of the warrant, law enforcement agents seized approximately 5.8 kilograms of cocaine, approximately $4,300 in cash, a cocaine press, a mechanical trap table, digital scales, a money counting machine and numerous items of drug packaging equipment. This cocaine seizure is not linked to the Romero DTO conspiracy, and Cesar Diaz-Bautista was not charged as a part of the Romero DTO conspiracy.

both cases be assigned to the same district judge,[4] because the cases were presumptively related and assignment to the same judge would result in significant savings of judicial resources and serve the interests of justice. Then-Chief Judge Roslynn R. Mauskopf reassigned Indictment Number 20-CR-433 to Your Honor that same day.

On June 16, 2021 and November 30, 2021, respectively, defendants Julio Bautista and Gustavo Valerio pleaded guilty. Defendant Cesar Diaz-Bautista is scheduled to plead guilty on February 22, 2022. Thus, Abreu is the only defendant left on Indictment Number 20-CR-433. On September 8, 2021, the U.S. Coast Guard arrested Romero on a boat bound to the United States from the Bahamas and Indictment Number 20-CR-380 was unsealed. Romero was ordered removed to the Eastern District of New York in custody and is currently incarcerated at the Metropolitan Detention Center. Romero's next appearance before the Court is scheduled for February 14, 2022 at 12:30 p.m.

II. Legal Standard

Rule 13 of the Federal Rules of Criminal Procedure provides that "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information," Fed. R. Cr. P. 13; see also United States v. Gordon, 655 F.2d 478, 485 (2d Cir. 1981). A court may look at factual allegations beyond those detailed in the indictment in deciding a Rule 13 motion to join trials. See United States v. Richards, 94 F. Supp. 2d 304, 309 (E.D.N.Y. 2000).

Rule 13 utilizes the substantive analysis of Rule 8(b), which sets forth the standard by which the government may join two or more defendants on the same indictment. See Fed. R. Cr. P. 8(b); Richards, 94 F. Supp. 2d at 309. "Rule 13 permits a judge to join indictments for trial if joinder would have been appropriate under Rule 8 had the charges been contained in a single indictment." United States v. De Yian, 1995 WL 368445, at *10 (S.D.N.Y. June 21, 1995). Further, Rule 8(b) provides that the joinder of charges is appropriate where, as here, the defendants are alleged "to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Cr. P. 8(b); see also Richards, 94 F. Supp. 2d at 309.

Rule 8(b) is satisfied if the underlying acts are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." United States v. Stewart, 433 F.3d 273, 314 (2d Cir. 2006) (quotation omitted); United States v. Attansio, 870 F.2d 809, 815 (2d Cir. 1989). Courts apply a commonsense rule to determine whether a reasonable person would easily recognize the common factual elements that permit joinder. United States v. Shellef, 507 F.3d 82, 98 (2d Cir. 2007). Courts favor joinder of trials and have noted that multiple trials are unfair to both the government and the accused and are time consuming for both the government and the court. United States v. McGrath, 558 F.2d 1102, 1106 (2d Cir. 1977); see also United States v. Werner, 620 F.2d 922, 928 (2d Cir. 1980). The

---

[4] The government filed its request for reassignment ex parte and under seal as Romero's indictment was under seal and the government was making efforts to locate and arrest him.

decision to order two indictments tried together rests in the district court's sound discretion. See Richards, 94 F. Supp. 2d at 309.

III. Analysis

Here, the government respectfully submits that the Court should exercise its discretion and order that Romero and Abreu be joined for trial because they are "unified by some substantial identity of facts [and] participants, [and] arise out of a common plan or scheme." Stewart, 433 F. 3d at 314. Specifically, (i) the defendants could have been properly joined in a single indictment; (ii) the defendants are both members of the Romero DTO; (iii) the defendants are charged with the same crimes; (iv) there will be voluminous and substantially overlapping evidence against the defendants; and (v) a joint trial would conserve valuable judicial resources.

As an initial matter, Romero and Abreu could have been properly charged in the same indictment. Romero and Abreu were indicted separately because Abreu and the other co-defendants' whereabouts were known whereas the government was making efforts to locate and arrest Romero and could not estimate how quickly that would occur. For that reason, Romero was put on a separate indictment to avoid inadvertently alerting him to the pending charges. Indeed, the government presented both criminal cases to the grand jury on the same day and used the same witnesses and similar evidence.

Moreover, Romero and Abreu are charged with the same crimes and the evidence at trial will necessarily establish that both Romero and Abreu are members of the same narcotics conspiracy—the Romero DTO. As set forth above, the evidence at trial will establish that Romero was the leader of the DTO's U.S.-based operations and that Abreu effectuated his role in the conspiracy at Romero's behest. The evidence introduced during any trial of the defendants will be almost identical and relevant to both defendants, as the government will be required to prove the existence of the charged conspiracy. The government's evidence against each defendant may include, without limitation: identical or overlapping testimony from witnesses and law enforcement officers, audio recordings, text messages between the defendants and others, photographs, other electronic evidence and narcotics seizures.

Further, evidence of the charged conspiracy will be admissible against each defendant, even if they are tried separately, because evidence of crimes committed by co-conspirators in furtherance of the charged conspiracy—as well as their statements—are admissible against all defendants alleged to belong to the conspiracy. See, e.g., United States v. Spinelli, 352 F.3d 48, 55–56 (2d Cir. 2003); United States v. Gambino, 101 F.3d 683 (2d Cir. 1996) (statements made by a co-conspirator in furtherance of narcotics conspiracy admissible against defendant); United States v. Spicer, No. 10-CR-657 (SJ), 2013 WL 871952, at *3 (E.D.N.Y. Mar. 7, 2013) (government's introduction of evidence pertaining to crimes committed by co-defendants admissible against defendant as acts in furtherance of the charged conspiracy).

Accordingly, because Abreu and Romero are "unified by some substantial identity of facts [and] participants," and the charges against them "arise out of a common plan or scheme" and could have been originally joined together on the same indictment, joinder of their indictments for trial would conserve valuable judicial resources, avoid overlapping and

4

redundant evidence, promote efficiency and serve the interests of justice. The Court should therefore grant the government's Rule 13 motion to join Abreu and Romero on the same indictment for trial.

IV. Conclusion

For the reasons set forth herein, the government respectfully requests that the Court grant its Rule 13 motion for joinder.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Erin M. Reid
Marietou E. Diouf
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (WFK) (by ECF)
Counsel of Record (by ECF and Email)