```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                     :
                                              :
              v.                              :      MEMORANDUM & ORDER
                                              :      20-CR-433 (WFK)
AMAURY ABREU,                                 :
                                              :
                        Defendant.            :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 29, 2023, Defendant pled guilty to a lesser-included offense of Count Two of the Indictment, charging him with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Plea Agreement ¶ 1, ECF No. 174. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 33 months of custody, to be followed by two years of supervised release with standard and special conditions, and a $100.00 mandatory special assessment.

## I.   BACKGROUND

The instant offense was uncovered through a joint investigation by the Federal Bureau of Investigation ("FBI"), the Department of Homeland Security Investigations ("HSI"), Customs and Border Protection ("CBP"), and the Rockville Centre Police Department ("RCPD") into a multinational drug trafficking organization ("DTO") operating on Long Island and in New York City. Presentence Investigation Report ("PSR") ¶ 4, ECF No. 186. Since 2016, law enforcement has seized more than 350 kilograms of cocaine from the DTO, who imported the cocaine into the United States by, *inter alia*, sending drug couriers to the United States on planes; smuggling drugs across the United States-Mexico border on trucks; and hiding narcotics in produce shipments bound for the United States. *Id.* ¶¶ 5, 13.

The joint investigation identified Defendant, a then-officer in the New York City Police Department ("NYPD"), as a member of the DTO. *Id.* ¶ 4. Using his position of public trust as an NYPD officer, Defendant attempted to help the DTO avoid law enforcement detection by

1

providing information about NYPD activity and procedures. *Id.* Phone records show Defendant was in routine contact with DTO leader Ramon Romero ("Romero") from 2018 through 2020, *id.* ¶ 20; in fact, the Government asserts Defendant and Romero were in near-daily communication during that period, Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 202. Defendant provided Romero information about how the NYPD runs out-of-state license checks and advice related thereto to facilitate a DTO associate's safe travels. PSR ¶ 15; *see also* Gov't Mem. at 2. After Romero provided Defendant a DTO leader's personally identifiable information, Defendant ran a search for that DTO leader in the NYPD's arrest database for no apparent law enforcement reason a few days before the DTO leader travelled internationally. PSR ¶ 16; *see also* Gov't Mem. at 2. Further, Defendant informed Romero about federal law enforcement arresting a rival DTO's members. PSR ¶ 18; *see also* Gov't Mem. at 2. Defendant also messaged Romero about a "license plate" Defendant had provided, to which Romero responded "that's my guardian angel brother I don't leave it anywhere thanks so much." PSR ¶ 17; *see also* Gov't Mem. at 2.

In addition to providing information, Defendant personally participated in a DTO drug trade involving the distribution of one kilogram of cocaine. *See* PSR ¶¶ 4, 19; Defense Sentencing Memorandum ("Def. Mem.") at 9, ECF No. 200; Gov't Mem. at 2; *see also* Plea Agreement ¶ 2, ECF No. 174. Defense counsel does not dispute these communications and activities occurred, but he argues the Court should consider them in light of additional context, as discussed *infra* at Part II.D.

While the above examples of Defendant using his position of public trust to attempt to help the DTO occurred in 2016, Defendant's association with the DTO and Romero did not end then. Not only did Defendant maintain regular phone contact with Romero between 2018 and

2

2020 as described above, but he travelled to the Dominican Republic to meet with Romero in January and February 2020. PSR ¶ 20; Gov't Mem. at 2.

On November 5, 2020, the United States of America filed an Indictment charging Defendant with: Count One, conspiracy to import cocaine, in violation of 21 U.S.C. §§ 963, 960(b)(1)(B)(ii), 952(a), and 960(a)(1), and Count Two, conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii)(II). Indictment ¶¶ 1-2, ECF No. 1. Defendant was arrested on November 9, 2020. PSR ¶ 27.

On November 29, 2023, Defendant pled guilty to a lesser included offense of Count Two, charging him with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). Plea Agreement ¶ 1. As part of his plea agreement, Defendant agreed not to appeal or otherwise challenge his sentence or conviction if the Court imposes a sentence at or below 51 months of imprisonment. *Id.* ¶ 4.

## II.   LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

3

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### A.  The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1.  Family and Personal Background

Defendant was born on July 3, 1986 in Bay Shore, New York to Natividad Abreu and Zotero Genao. PSR ¶ 49. Defendant is an only child. *Id.* Defendant was raised in a socioeconomically modest home in Copiague, New York free from abuse and neglect. *Id.* ¶¶ 50, 51. Defendant shared a close relationship with and cared for his mother before she passed away from cancer in 2019. *Id.*; *see also* Def. Mem. at 15-16. Following Defendant's mother's death, Defendant's father moved in with Defendant and his family. PSR ¶ 49. Defendant shares a close relationship with his father, who is aware of the instant offense and remains supportive. *Id.* Defendant's father suffers from numerous medical ailments, and Defendant, as primary caregiver, provides his father daily care. *Id.* ¶¶ 49, 66; *see also* Def. Mem. at 11, 16-17, 25-28; Certain of Defendant's Fathers Medical Records, Ex. F to Def. Mem., ECF No. 200-2.

Defendant married his wife, Yomaira Abreu, in the Dominican Republic in 2010. PSR ¶ 52. The two share a twelve-year-old daughter and an eight-year-old son. *Id.* ¶ 54; PSR

Addendum at 1, ECF No. 203. Defendant's wife and daughter are aware of the instant offense and remain supportive. PSR ¶¶ 53, 54. Defendant's son is unaware of the details of Defendant's offense. *Id.* ¶ 54.

### 2. Educational and Employment History

In June 2004, Defendant graduated from Walter G. O'Connell High School in Copiague, New York. *Id.* ¶ 65. In 2006, Defendant received his Associate Degree in Business from ASA Institute of Business Technology in Brooklyn, New York. *Id.* ¶ 64.

Defendant worked as a full-time sales representative in Manhattan from 2006 through 2011. *Id.* ¶ 69. As discussed *supra* at Section I, Defendant served as a NYPD police officer from 2011 through November 2023. *Id.* ¶ 68. After Defendant was arrested for the instant offense, he was suspended for 30 days, after which he was reassigned to the Military Extended Leave Desk until November 2023. *Id.*; *see also* PSR ¶ 68; Def. Mem. at 20, 23.

In 2022, Defendant obtained his commercial driver's license and started a trucking company. *Id.* ¶ 71; *see also* Ex. H to Def. Mem., ECF No. 200-2 (Defendant's commercial driver's license). However, this trucking company is not yet operational. PSR ¶ 71.

### 3. Prior Convictions

Defendant has no prior criminal convictions. *Id.* ¶ 44.

### 4. Medical and Mental Health

Defendant has suffered from asthma since he was a child. *Id.* ¶ 59. Defendant was diagnosed with hypertension when he was 20 years old, for which, his wife reported, he was once hospitalized. *Id.* ¶ 60. Defendant attended therapy between February 2021 and November 2023 to help him cope with the instant charges. *Id.* ¶ 61; *see also* Ex. G to Def. Mem., ECF No. 200-2 (letter from Defendant's psychologist).

### 5. <u>Substance Abuse</u>

Defendant reports no history of alcohol or controlled substance abuse or misuse. *Id.* ¶ 63.

### 6. <u>Nature and Circumstances of the Offense</u>

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Section I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

This offense was extremely serious. Defendant, while serving as an NYPD officer sworn to protect the public, became a member of a multinational DTO. *See supra* Part I. Defendant used his NYPD resources and training, not to thwart the DTO, but to assist it. *See id.* Defendant himself, while an NYPD officer, participated in a DTO drug transaction involving one kilogram of cocaine. *See id.* The Court's sentence will deter others, particularly other police officers, from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to a lesser included offense of Count Two of the Indictment, charging him with conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).

6

Defendant faces a statutory maximum term of imprisonment of twenty years and no minimum term of imprisonment. 21 U.S.C. §§ 846 and 841(b)(1)(C). Ordinarily, Defendant's crime of conviction would require a statutory minimum term of supervised release of three years and a maximum term of supervised release of life. 21 U.S.C. § 841(b)(1)(C); *United States v. Brooks*, 889 F.3d 95, 102 (2d Cir. 2018). However, Defendant meets the safety-valve criteria in 18 U.S.C. § 3553(f)(1)-(5), meaning Defendant faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b); 18 U.S.C. § 3553(f). If Defendant violates a condition of release, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Defendant is also eligible for not less than one nor more than five years of probation, and, barring extraordinary circumstances, the Court must impose a fine, restitution, or community service as a condition of probation. 18 U.S.C. §§ 3561(c)(1) and 3563(a)(2). Defendant faces a maximum fine of $1,000,000.00. 21 U.S.C § 841(b)(1)(C).

The Court is also required to impose a mandatory special assessment of $100.00 per count. 18 U.S.C. § 3013.

### D.   The Kind of Sentences and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The applicable Guideline for conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), is U.S.S.G. §2D1.1. Because Defendant is accountable for one kilogram of cocaine, *see* Plea Agreement ¶ 2, which is more than 500 grams but fewer than two kilograms of cocaine, U.S.S.G. §2D1.1(c)(8) provides a base

7

offense level of 24. Two levels are removed because Defendant provided a complete and truthful statement to the Government regarding his participation in the offense, and is therefore eligible for the "safety-valve" reduction under U.S.S.G. §§2D1.1(b)(18) and 5C1.2(a). Because Defendant abused a position of public trust in a way that significantly facilitated the commission or concealment of the offense, two levels are added pursuant to U.S.S.G. §3B1.3. Three levels are removed pursuant to U.S.S.G. §3E1.1 to account for Defendant's timely acceptance of responsibility for the offense. Finally, because Defendant is a Zero-Point Offender under U.S.S.G. §4C1.1, two additional levels are removed. Altogether, Defendant's total adjusted offense level is 19.

The parties agree Defendant has a criminal history score of zero and a criminal history category of I. PSR ¶ 44; *see generally* Gov't Mem. at 2; Def. Mem. at 2.

Based on a criminal history category of I and a total offense level of 19, the Guidelines imprisonment range is 30 to 37 months of imprisonment. U.S.S.G. Ch. 5 Pt. A; PSR Addendum at 1. All parties agree with these calculations, which the Court adopts. PSR ¶ 41; Gov't Mem. at 3; Def. Mem. at 2.

The parties' sentencing recommendations vary. Probation recommends a within-Guidelines sentence of 33 months of custody; one year of supervised release with special conditions; a $10,000.00 fine; and a $100.00 special assessment. Probation Recommendation at 1, ECF No. 186-1. In recommending this sentence, Probation emphasizes: the seriousness of the instant offense, the need for both general and specific deterrence, and most critically, Defendant's betrayal of the public's trust by using his position as an NYPD officer to advance the goals of and assist a multinational DTO. *Id.* at 3. Probation further recommends the Court

excuse Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d). *Id.* at 1.

Defense counsel recommends a below-Guidelines sentence of three months of home confinement followed by two years of supervised release. Def. Mem. at 2. In so recommending, defense counsel primarily characterizes Defendant's conviction for conspiracy to possess cocaine with intent to distribute as involving a one-off drug trade. *See, e.g.*, Def. Mem. at 9. Specifically, defense counsel asserts Defendant served in a one-time and unplanned liaison role to facilitate this transaction, Def. Mem. at 9, where Defendant's role was limited to being present when the cocaine was dropped off, staying with the cocaine until a co-conspirator picked it up, and transporting a bag of approximately $28,000.00, Supplemental Defense Memorandum ("Suppl. Def. Mem.") at 2, ECF No. 201. Defense counsel further argues Defendant's involvement with the DTO was to maintain his friendship with Romero. Def. Mem. at 3; *see also id.* at 5-7, 8-9.

Although Defendant does not dispute he used NYPD resources at Romero's behest, defense counsel provides additional context for certain examples of Defendant's abuse of position of trust and argues this conduct often involved pretending to help Romero. *Id.* at 4-7. As to the information Defendant provided Romero about NYPD out-of-state license checks, defense counsel asserts the information Defendant conveyed was inaccurate. Def. Mem. at 4-5 (citing Letter of Support from NYPD Lieutenant Corey Goines, Ex. A to Def. Mem., ECF No. 200-1). While defense counsel acknowledges Defendant searched for a DTO leader in the NYPD's arrest database, defense counsel asserts that search was not a "warrant check" as characterized by the Government and Probation, because "warrant check" is a term of art which only applies to searches of the NYPD's warrant database, as opposed to the separate NYPD

9

arrest history database. Def. Mem. at 5; *see also* Goines Letter of Support, Ex. A to Def. Mem. According to defense counsel, a true warrant check in the warrant database would have accurately reported an individual's outstanding warrants and involved follow-up from an Integrity Control Officer. Def. Mem. at 5-6. Moreover, despite not performing a true and accurate warrant check, Defendant, according to defense counsel, inaccurately told Romero the other DTO leader had a warrant. *Id.* Defense counsel further argues the "license plate" communications may involve a Spanish-to-English translation error: the Spanish word "placa" can be translated as either "license" or "plaque," and these messages were, according to defense counsel, referring to an NYPD mini-shield[1] Defendant had given to Romero, rather than a license plate used to help Romero evade law enforcement detection. *See* Def. Mem. at 6. Finally, in reference to Defendant informing Romero about a law enforcement operation resulting in the arrest of a rival DTO's members, whom Defendant called "the enemy's" people, PSR ¶ 18; *see also* Gov't Mem. at 2, defense counsel argues Defendant used the term "the enemy" to describe a specific competitor toward whom Romero had animosity for personal reasons. Suppl. Def. Mem. at 1-2.

Defense counsel maintains a Guidelines sentence is not necessary to effectuate the goal of specific deterrence, as Defendant did not participate in any drug dealing following his one-time distribution of cocaine in September of 2016 and he exhibits none of the risk factors for recidivism. Def. Mem. at 20, 22. As such, defense counsel asserts it was Defendant's remorse and shame over his conduct, rather than his November 2020 arrest, that motivated him to not participate in any further drug transactions. *Id.* As to general deterrence, defense counsel argues

---

[1] Defense counsel exhibits a photograph of a NYPD mini-shield as Exhibit B to its submission. Ex. B to Def. Mem., ECF No. 200-1. Defense counsel asserts police officers routinely give family and friends these mini-shields. Def. Mem. at 6 (citing Goines Letter of Support, Ex. A to Def. Mem.).

a sentence of three months of home confinement, combined with media coverage of Defendant's life since his arrest—to include the loss of his job, his conditions of supervised release, and his guilty plea—will serve to deter others from committing similar offenses. *Id.* at 21-22. In fact, defense counsel asserts a below-Guidelines sentence will encourage others to cooperate with law enforcement. *Id.* at 22. Ultimately, defense counsel argues Defendant is a loving and deeply committed family man who loved his job as an NYPD officer and, despite making a terrible mistake, deserves a chance at redemption. *See id.* at 9-10.

Defense counsel further argues a downward departure is warranted both pursuant to U.S.S.G. §5H1.6 (Policy Statement), and for consistency with the sentence this Court imposed on co-defendant Cesar Diaz-Bautista.[2] *Id.* at 24-28. Defense counsel maintains U.S.S.G. §5H1.6 (Policy Statement) warrants a downward departure because of Defendant's role as his ailing father's caretaker. Def. Mem. at 25-26. While "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted," U.S.S.G. §5H1.6 (Policy Statement), courts consider the following non-exhaustive factors in determining whether to downwardly depart from the recommended Guidelines sentence pursuant to this Policy Statement: (1) "[t]he seriousness of the offense;" (2) "[t]he involvement in the offense, if any, of members of the defendant's family;" and (3) "[t]he danger, if any, to members of the defendant's family as a result of the offense." Application Note 1(A) to U.S.S.G. §5H1.6 (Policy Statement). For a Court to specifically depart "based on the loss of caretaking or financial support of the defendant's family," in addition to considering the aforementioned non-exhaustive factors, the Court must find each of the following circumstances exist: (1) a Guidelines sentence "will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the

---

[2] The Court addresses defense counsel's sentencing consistency argument *infra* at Part II.F.

11

defendant's family;" (2) "[t]he loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant;" (3) "[t]he loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available," such that "the defendant's caretaking or financial support [are] irreplaceable to the defendant's family;" and (4) the departure will effectively "address the loss of caretaking or financial support." Application Note 1(b) to U.S.S.G. §5H1.6 (Policy Statement).

As to the non-exhaustive factors the Court must consider in determining whether a downward departure is warranted, defense counsel maintains the offense—characterized as involvement in a single cocaine transaction—was undoubtedly serious, but ultimately an isolated, one-time, and nonviolent occurrence from over eight years ago which neither involved nor endangered Defendant's family. Def. Mem. at 26.

Defense counsel further argues each of the circumstances required to permit a departure predicated on loss of caretaking or financial support is present. *Id.* at 27. First, Defendant's incarceration would cause a substantial, direct, and specific loss of caretaking or financial support to Defendant's family because Defendant is the primary caretaker for his father and his children while his wife is employed full-time. *Id.* Defense counsel maintains if Defendant were incarcerated, Defendant's wife would need to reduce her hours to part-time to fulfill Defendant's missing caretaking responsibilities, causing her and her family significant hardship. *Id.*; *see also* Letter of Support from Defendant's Wife, Ex. A to Def. Mem.

Second, defense counsel argues the loss of Defendant's caretaking abilities "substantially exceeds the harm ordinarily incident" to a defendant's incarceration. If Defendant—his father's only family—were incarcerated, defense counsel maintains Defendant's father would need either

a professional caretaker or the resources of an assisted living facility—neither of which Defendant's family could afford on his wife's part-time income. *Id.* at 27.

Third, defense counsel maintains no effective remedial or ameliorative programs are reasonably available because Defendant is a qualified paid caretaker for his father, *id.* at 28, and not only would an assisted living facility provide a lower quality of care, but the absence of Defendant's critical emotional support would likely significantly negatively impact his father's health. *Id.* Finally, the requested downward departure to a non-incarceratory sentence would directly prevent any loss of caretaking, as a Guidelines sentence of incarceration would in fact cause the loss of caretaking at issue. *Id*

The Court has read and considered the letters submitted by Defendant's family, friends, and supporters, including multiple current and former NYPD officers. Ex. A to Def. Mem. The letters describe Defendant as a loving husband, a deeply committed father and son, a dedicated police officer, and an overall exemplary person who made a bad decision which he deeply regrets and for which he feels true remorse. *See id.* The Court appreciates what Defendant's advocates have said on his behalf. The Court has also reviewed the photos of Defendant and Defendant's family. Exs. C, D, and E to Def. Mem., ECF Nos. 200-1 and 200-2.

The Government recommends a sentence within the Guidelines range of 30 to 37 months of incarceration. Gov't Mem. at 1. The Government emphasizes the seriousness of Defendant's offense, which involved "abus[ing] his position of trust as [an NYPD] officer to assist the DTO, an international drug-trafficking organization" by "provid[ing] the DTO with information and equipment to help the DTO conceal its criminal activities," thus "facilitating the DTO's importation of multi-kilogram quantities of cocaine into the United states." *Id.* at 3. Beyond that, the Government states Defendant was personally involved in the exchange of cocaine on at

13

least one occasion. *Id.* At bottom, the Government asserts Defendant "prioritized the needs of a sophisticated drug trafficking organization over his sworn duties as a public servant." *Id.* Moreover, Defendant's conduct "was not aberrational or the result of a fleeting mistake; instead, [Defendant] acted as Romero's trusted confidant for years, assisting him and the DTO multiple times." *Id.* The Government argues a Guidelines sentence is necessary to both specifically deter Defendant from committing similar crimes in the future, and to generally deter individuals in powerful public positions from joining criminal organizations. *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

As discussed *supra* at Part II.D, defense counsel argues the Policy Statement at U.S.S.G. §5H1.6 warrants a downward departure from the recommended Guidelines range. The parties have not pointed the Court to any other pertinent policy statements, and the Court has not found any on its own.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires this Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court understands defense counsel's request that the Court impose to a below-Guidelines sentence "as a matter of consistency" to be an argument about avoiding unwarranted sentence disparities between similarly situated defendants. *See* Def. Mem. at 25. Defense

14

counsel points out co-defendant Diaz-Bautista received an approximately 24% downward departure from his Guidelines range. *Id.* Defense counsel compares Defendant's conduct—characterized as participation in one isolated drug transaction involving one kilogram of cocaine in which Defendant did not have a proprietary interest—to the conduct of Diaz-Bautista, who allowed the DTO to use Diaz-Bautista's home as a stash house wherein law enforcement recovered 5.8 kilograms of cocaine in which Diaz-Bautista did not have a proprietary interest. *Id.* at 25. Defense counsel further notes both Diaz-Bautista and Defendant have mitigating factors warranting departures from the Guidelines range. *Id.* As such, defense counsel asserts Defendant should receive a below-Guidelines sentence like co-defendant Diaz-Bautista. *See id.*

The Court premises its sentence on the nature and characteristics of this Defendant and the instant crime of conviction. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires this Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in this case.

### III. CONCLUSION

And finally, the Court has this to say: for 23 years, I served as Commissioner on the New York City Civilian Complaint Review Board reviewing complaints against members of the NYPD. I learned the truth of what former Police Commissioners Richard Condon and Benjamin Ward told me: unlike the military where only a rogue general can do the greatest good or harm, in policing it is our line officers whom we see in our daily lives, whom we empower to serve, to

15

protect, and to guard us from the evil lurking in every neighborhood, who have the greatest power over our lives. They abhorred corrupt cops for that reason. And rightly so.

Defendant betrayed that sacred trust: a trust our great nation, our great city, our great people placed in Defendant as a member of the greatest police force on earth: the New York City Police Department.

Defendant did not shame his beautiful and supportive family. Defendant did not shame his colleagues in the NYPD. Defendant did not shame this great nation. Defendant did not have such power. Defendant only shamed himself. How sad. How very, very sad.

For those reasons and the reasons set forth above, the Court sentences Defendant to 33 months' imprisonment to be followed by two years of supervised release with both the standard conditions and special conditions, and a $100.00 mandatory special assessment. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3583(d) and 3563(a)(5).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addendum thereto, ECF Nos. 186, 203, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: November 18, 2024
Brooklyn, New York